IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IRENE SANDERS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil No. _____ |
| ) | |
| COTY INC., and COTY US, LLC ) | JURY DEMAND |
| ) | |
| *Defendants*. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is a cause of action alleging violations of both Federal and State prohibitions against discrimination on the basis of age pursuant to 29 U.S.C. § 621 et seq., and/or T.C.A. § 4-21-101 et seq.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction of Plaintiff's claims brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 626(c) and 28 U.S.C. § 1331. The Court has pendent or supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

3. On or about June 15, 2012 Plaintiff filed a charge of discrimination on the basis of age with the EEOC. On or about March 18, 2013 Plaintiff received her notice of suit rights. This action is brought within ninety days of Plaintiffs' receipt of her notice.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

1

### III. PARTIES

5. Plaintiff Irene Sanders is a citizen and resident of Franklin, TN and at all times pertinent to her claims was an employee of Coty, Inc., Coty Prestige Division and/or Coty US, LLC. Ms. Sanders' date of birth is February 25, 1958. Ms. Sanders began work for a Coty predecessor in June of 1992.

6. Coty, Inc., is a corporation licensed to do and doing business in the State of Tennessee and, doing business as and thru its division Coty US, LLC, was the employer of Plaintiff Irene Sanders until her termination on August 26, 2011.

7. Coty US, LLC, upon information and belief is a subsidiary or division of Defendant Coty Inc., and is licensed to do and is doing business in this District and, with Defendant Coty, Inc., was the employer of Plaintiff until her termination on August 26, 2011.

### IV. FACTUAL BACKGROUND

8. In June of 1992, Plaintiff Irene Sanders began her employment with Lancaster Group USA, a Coty predecessor. Plaintiff was hired as an Account Executive. Plaintiff was transferred by Defendants to Nashville, Tennessee in 1993 where she remained until her termination.

9. Plaintiff remained employed in sales for Defendants for the next 20 years. Over that period of time Plaintiff was "instrumental in helping to build" Coty, as the Senior Vice President for Sales described it.

2

10. In each of Plaintiff's 20 years with Defendant she received annual evaluations of either "Good" or "Excellent," or in later years, either "Achieved" or "Exceeded Objective." For example, on Plaintiffs' last two evaluations, those for fiscal years 2010 and 2011, Plaintiff received overall performance ratings of 4.4 and 4.5 respectively on a scale of 1-5, with 5 being "Outstanding."

11. In or around April of 2006, Plaintiff was promoted to the position of Market Manager. As a Market Manager, Plaintiff's duties and responsibilities included: managing, directing and developing a staff of 4 or 5 Retail Managers covering as many as 6 states and business totaling $18M; maintaining budgets for all in-store and co-op positions with Retailers; planning, executing and maintaining all budgets for travel/expenses and in store events for each Retail Manager; working closely with the Retailers at regional and Vice Presidential levels to promote and launch new brands as well as maintaining the numerous existing brands; and planning for and managing 3 "blitz teams" as well as over 150 independent fragrance specialists. As a Market Manager Plaintiff also had 4-5 Retail Managers at any one time who reported to her.

12. In most fiscal years, Plaintiff was consistently ranked as one of the top producing Market Managers in the entire company.

13. Periodically over the course of Plaintiff's employment with the Defendant, Plaintiff's husband occasionally assisted one of her Retail Managers with such tasks as helping to set-up store displays, and working in store as a fragrance sales person.

14. In accord with widespread practice within the Defendants' company, Plaintiff also used gift cards to reward high performing store employees as well as individuals who occasionally assisted her in other ways but who were not regular Coty employees.

15. In 2011, Defendants instituted a policy regarding employment of family members of Coty employees. Specifically the policy was that immediate family members of Coty employees could be employed by the company but could not report "directly or indirectly" to an immediate family member. Training on this policy was provided in Defendants' sales meeting in or around May of 2011 in Scottsdale, Arizona.

16. Following the discussion of the policy regarding employment of family members, Plaintiff approached the HR employee giving the training to ask about a situation involving the husband of one of her Retail Managers. The HR employee was not able to answer the question right then and suggested a follow-up telephone call.

17. Plaintiff did follow-up with HR regarding the family employment issue and was told that as long as the family member reported to a different Retail Manager, such arrangement would not be a violation of policy.

18. In August of 2011, Plaintiff received an email from one of her Retail Managers requesting the phone number of Plaintiff's husband because the Retail Manager needed additional work from him. The Retail Manager making the request had prepaid him for hours he had not then completed. The Retail Manager did make contact with Plaintiff's husband and arranged for him to work in one of her stores the following weekend. Based on her earlier conversations with HR personnel, Plaintiff did not believe that this arrangement violated any company policy.

19. In late August 2011, Plaintiff received a telephone call from Defendants' HR employees. Plaintiff was in Dallas, Texas, discussing a new product with store managers and her local Retail Manager. Plaintiff was questioned about the activities of her husband and her

daughter, and about her use of gift cards. Plaintiff did her best to respond but she had no access to records. Plaintiff requested the opportunity to call one of her supervisors, but was denied.

20. Although the Coty Employee Handbook states that in cases of involuntary terminations, the employee should be verbally informed of the termination by his or her manager, Plaintiff was not so informed and in fact, Plaintiff was told she was not allowed to call her manager.

21. On or about August 26, 2011, Ms. Sanders was notified by the HR employee who questioned her a few days before that she was being terminated. Plaintiff was told she could apply for unemployment and that she would receive her bonus, but she would not receive severance.

22. The real reason for Plaintiff's termination was her age.

23. Subsequently Plaintiff's position was filled by a person who, on information and belief, is at least six years younger than the Plaintiff.

24. At the time of her termination, Plaintiff was in a protected category, over the age of 40, she was well qualified for her position, she was terminated and she was replaced by a younger person. Any reasons provided by Defendants including but not limited to any violation of company policy are mere pretext, in that the use of gift cards and/or the work performed by Plaintiff's husband for a Retail Manager was done with the knowledge and acquiescence of Defendant and were common practices within the Defendant's company. .

25. As a direct and proximate result of Defendants' unlawful termination of Plaintiff, Plaintiff has lost her job of 20 years including all pay and benefits such as salary, bonuses,

5

vacation time and, medical or other insurance, and has been embarrassed and humiliated and will continue to suffer such losses now and in the future.

WHEREFORE, Plaintiff prays:

1. For a trial by jury;

2. For an award of back pay and compensatory damages sufficient to make her whole;

3. For an award of front pay through normal retirement, or, in the alternative, for reinstatement.

4. For an award of liquidated or punitive damages in an amount sufficient to punish the wrongdoer and act as a deterrent to future wrongdoing;

5. For all costs and fees, including a reasonable attorney's fee in accord with applicable Federal and/or State law; and

6. For such other and further relief to which she may be entitled.

Dated: May 17, 2013

Respectfully Submitted,

/s/ Douglas S. Johnston, Jr.
DOUGLAS S. JOHNSTON, JR., #5782
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
(615) 244-2202
djohnston@barrettjohnston.com

*Counsel for Plaintiff*

6